FILED
2022 Apr-06  PM 12:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **FRANKIE THOMAS ROGERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.: 2-21-cv-01065-ACA** |
| | ) | |
| **STATE OF ALABAMA, ET AL.,** | ) | |
| | ) | |
| **Defendants** | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are two motions to dismiss Plaintiff Frankie Thomas Rogers' amended complaint, one filed by the State of Alabama (doc. 10), and the other filed by the City of Oneonta, Charles Clifton, Richard Phillips, Amanda Stanfield, and Matthew Suddeth (collectively the "Oneonta Defendants") (doc. 11).

Mr. Rogers' amended complaint asserts various constitutional claims and state law torts against nine different defendants: (1) the State of Alabama ("the State"); (2) The City of Oneonta; (3) Oneonta Police Chief Charles Clifton; (4) Oneonta Mayor Richard Phillips; (5) Oneonta city clerk Amanda Stanfield; (6) Oneonta police officer Matthew Suddeth; (7) Jason Moore, owner of Skint Knuckle Garage and Towing; (8) Skint Knuckle Garage and Towing; and (9) Blount County Sheriff Mark Moon.  (Doc. 9 at 1).

Jason Moore and Skint Knuckle Garage and Towing have answered Mr. Rogers' original complaint (doc. 1-1), but have not yet responded to the amended complaint.   Mr. Rogers has not yet served Mr. Moon, who was not a named defendant in the original complaint.   (*Id.*).   The remaining defendants have moved to dismiss the entirety of Mr. Rogers' claims against them.   (Docs. 10, 11).

Because Mr. Rogers' claims against the State are barred by Eleventh Amendment immunity, the court **GRANTS** the State's motion to dismiss **WITH PREJUDICE**.   For reasons discussed below, the court **GRANTS IN PART** and **DENIES IN PART** the Oneonta Defendants' motion to dismiss.

## I.     BACKGROUND

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff.   *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

Mr. Rogers alleges that on June 24, 2021, he was pulled over by the City of Oneonta police officer Matthew Suddeth for his failure to have a license plate on his truck.   (Doc. 9 at 2 ¶ 7).[1]   After pulling Mr. Rogers over, Officer Suddeth asked for Mr. Rogers' driver's license, to which Mr. Rogers responded that he was not driving a "vehicle," but was driving an "automobile."   (*Id.*).   Officer Suddeth then requested

---

[1] Mr. Rogers includes two paragraphs numbered 7 in his complaint.   (*See* doc. 9 at 1–2).   The court references Mr. Rogers' second paragraph numbered 7, which begins on the second page of his complaint and is located under the "FACTS" heading.   (*Id.* at 2)/

Mr. Rogers' proof of insurance. (*Id*.). The complaint does not state whether such proof was provided, but it does state that Officer Suddeth issued Mr. Rogers a citation during the traffic stop. (*Id*.).

According to Mr. Rogers, Officer Suddeth then called Skint Knuckle Garage and Towing after issuing him a citation. (*Id*.). Officer Suddeth told Mr. Rogers that he was impounding his 2002 Chevy Silverado pickup truck pursuant to Alabama's Safe Streets Act. (Doc. 9 at 2 ¶ 7). Mr. Rogers alleges that this statute was repealed in 1998 and that Officer Suddeth did not have a warrant to confiscate his property. (*Id*. at 2 ¶¶ 7, 8).

After impounding Mr. Rogers' truck, Officer Suddeth and Blount County Sheriff Mark Moon searched the truck and confiscated Mr. Rogers' pistol without a warrant or probable cause. (*Id*. at 2 ¶ 7). Mr. Rogers was also apparently arrested in conjunction with this traffic stop, although the facts do not clearly state at what time the arrest occurred or what defendant effectuated the arrest. (*Id*. at 7–8 ¶¶ 40, 42, 44). Upon his arrest, Mr. Rogers stayed in jail for an unspecified amount of time. (*Id*. at 8 ¶ 44). While in jail, Mr. Rogers stayed in a crowded cell and contracted Covid-19 as a result. (*Id*.).

To regain custody of his truck, Mr. Rogers had to pay fines that he could not afford. (Doc. 9 at 5 ¶ 22). He alleges that Officer Suddeth, Sheriff Moon, Mr. Moore, and Skint Knuckle Garage and Towing imposed those fines. (*Id*.). He also

alleges that Sheriff Moon remains in possession of his pistol, despite Mr. Rogers' numerous requests to have it returned.  (*Id*. at 7 ¶ 38).

## II.    DISCUSSION

The State moves to dismiss Mr. Rogers' claims against it for lack of subject matter jurisdiction.  (Doc. 10).  The Oneonta Defendants move to dismiss Mr. Rogers' amended complaint, contending that: (1) the complaint remains a shotgun pleading, and (2) Mr. Rogers' federal and state law claims fail to state a claim.  (Doc. 11).

### 1.  Mr. Rogers' claims against the State

Mr. Rogers brings two counts against the State.  (Doc. 9).  In Count One, Mr. Rogers asserts a claim for state law conversion, arguing that the State unlawfully stole his truck and pistol under the guise of a long-repealed state law.  (*Id*. at 2 ¶¶ 8, 9).  In Count Six, Mr. Rogers alleges that the State violated his Fourteenth Amendment rights by taking his property without due process.  (*Id*. at 4 ¶¶ 18, 19).

The State moves to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  (Doc. 10).  It makes two jurisdictional arguments.  First, the State argues that it has Eleventh Amendment immunity from Mr. Rogers' claims.  (*Id*. at 4–7).  Alternatively, it argues that Mr. Rogers lacks standing to bring his claims against it.  (*Id*. at 7–10).  Because the court finds the State's sovereign immunity bars Mr. Rogers' claims against it, the court will not

address the issue of standing. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[T]here is no mandatory sequencing of jurisdictional issues.") (internal quotations omitted).

The Eleventh Amendment states that

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

The Supreme Court has consistently interpreted the Eleventh Amendment broadly and "held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). A citizen may sue a State only if Congress has abrogated the State's sovereign immunity or the State has waived its sovereign immunity. *Stroud v. McIntosh*, 722 F.3d 1294, 1298 (11th Cir. 2013). Alabama has not waived its immunity. *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citing Article 1, Section 14 of the Alabama Constitution of 1901). Nor did Congress abrogate sovereign immunity when it passed 42 U.S.C. § 1983, which is the statute through which litigants like Mr. Rogers can assert claims for violations of their constitutional rights. *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 337–41 (1979)).

In his response to the State's motion to dismiss, Mr. Rogers argues that the State is not entitled to immunity because it is a "fictitious, corporate, territorial State" that is a subdivision of the corporate United States.  (Doc. 18 at 1).  Mr. Rogers also argues that, as a citizen of Alabama, he is not barred from suing the State under the plain language of the Eleventh Amendment.  (*Id*. at 1–4).  Mr. Rogers' arguments lack merit.  As stated above, the Supreme Court has long held that sovereign immunity extends to suits by non-citizens and citizens alike.  *Edelman*, 415 U.S. at 662–63.  The court declines Mr. Rogers' invitation to question the well-established principles of state immunity.

Next, Mr. Rogers argues that the allegations in his amended complaint "void[] any immunity" that Alabama claims to have.  (Doc. 18 at 3).  In support of this argument, Mr. Rogers cites *Hope v. Pelzer*, 536 U.S. 730 (2002), for the proposition that an official loses the protection of immunity when he or she violates a clearly established constitutional right.  (Doc. 18 at 3).  But qualified immunity for state officials and sovereign immunity for the State itself are distinct legal concepts, and only the latter is argued in the State's motion to dismiss.  Therefore, Mr. Rogers' argument is misplaced.  The only exceptions that exist for state immunity are abrogation by Congress or waiver by the State.  *Stroud*, 722 F.3d at 1298.  Neither exception applies here.

Sovereign immunity bars Mr. Rogers' claims against the State.  Accordingly, the court **DISMISSES** Counts One and Six against the State **WITHOUT PREJUDICE**.

The court **DIRECTS** the Clerk to term the State as a defendant.

2.  Mr. Rogers' claims against the Oneonta Defendants

Before analyzing the Oneonta Defendants' arguments in their motion to dismiss, the court must clarify some preliminary issues regarding Mr. Rogers' claims in his amended complaint.  On two occasions in his motion to dismiss, Mr. Rogers makes allegations against the Oneonta Police Department.  (Doc. 9 at 5–6 ¶¶ 22, 30). However, Mr. Rogers does not include the Oneonta Police Department as a named defendant, nor was the Oneonta Police Department ever served in conjunction with this case.  The court will analyze Mr. Rogers' claims only against those named defendants specified in each count.

Next, the court notes that Mr. Rogers did not specify in his complaint whether his suit is against the defendants in their individual capacities, official capacities, or both.  The Oneonta Defendants assumed that Mr. Rogers brought his claims against them only in their official capacities.  (Doc. 11 at 16).  Therefore, their motion to dismiss does not address why Mr. Rogers' claims against them in their individual capacities should be dismissed.  (*Id*. at 14–24).

The court cannot, at this early stage, assume that Mr. Rogers intended his claims to be against the Oneonta Defendants only in their official capacities. "When it is not clear in which capacity the defendants are sued, the course of the proceedings typically indicates the nature of the liability sought to be imposed." *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1047 (11th Cir. 2008) (quotations omitted). While it would have been "clearly preferable" for Mr. Rogers to state in which capacity the defendants are being sued, he was not required to do so in his complaint. *Id*. (quotations omitted). Therefore, the court will treat Mr. Rogers' claims as brought against the defendants in both their official and individual capacities.

Mindful of the liberal interpretation afforded to complaints filed by *pro se* litigants, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the court interprets Mr. Rogers' complaint as asserting the following claims against the Oneonta Defendants: (1) state law conversion against the City of Oneonta ("Count One"); (2) a Fourth Amendment violation against Officer Suddeth in his official and individual capacity ("Count Two); (3) state law fraud against Officer Suddeth in his official and individual capacity ("Count Three" and "Count Seven"); (4) a Fifth Amendment violation against Officer Suddeth in his official and individual capacity ("Count Four"); (5) a Tenth Amendment violation against Officer Suddeth in his official and individual capacity ("Count Five"); (6) a Fourteenth Amendment violation against

the City of Oneonta, Richard Phillips, Chief Clifton, Amanda Stanfield, and Officer Suddeth in their official and individual capacities ("Count Six"); (7) an Eighth Amendment violation against the City of Oneonta and Officer Suddeth in his official and individual capacity ("Count Eight"); (8) state law conspiracy against the City of Oneonta and Officer Suddeth in his official and individual capacity ("Count Ten" and "Count Eleven"); (9) state law negligence against Chief Clifton in his official and individual capacity ("Count Twelve"); and (10) state law conversion against the City of Oneonta, Richard Phillips, Chief Clifton, Amanda Stanfield, and Officer Suddeth in their official and individual capacities ("Count Thirteen").

In their motion to dismiss, the Oneonta Defendants argue that Mr. Rogers' amended compliant remains a shotgun pleading and should be dismissed in its entirety. The Oneonta Defendants also argue that Mr. Rogers' claims fail as a matter of law and should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## A. <u>The amended complaint is not a shotgun pleading</u>

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And Federal Rule of Civil Procedure 10(b) requires a complaint to contain "numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). The Eleventh Circuit has

explained that pleadings "that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'"   *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).

Shotgun pleadings fall into "four rough types of categories." *Id*. at 1323.  The first "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id*.  The second is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id*.  The third is one that does "not separate[] into a different count each cause of action or claim for relief." *Id*.  And the fourth type is a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id*.

This court previously determined that Mr. Rogers' original complaint filed in state court (doc. 1-1) was a shotgun pleading of the fourth type and ordered him to replead (doc. 8).  In its order, the court directed Mr. Rogers to file an amended complaint that includes separate counts for each claim and identifies the specific defendant or defendants against whom each count is brought.  (*Id*.).  Pursuant to the court's order, Mr. Rogers filed an amended complaint on September 7, 2021.  (Doc. 9).

The Oneonta Defendants argue that Mr. Rogers' amended complaint remains a shotgun pleading. (Doc. 11 at 8–9). The court disagrees. First, Mr. Rogers is a *pro se* litigant, and therefore his "complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quotations omitted). While Mr. Rogers' amended complaint "is not a model of efficiency or specific, . . . it does adequately put [the defendants] on notice of the specific claims against them and the factual allegations that support those claims." *Weiland*, 792 F.3d at 1325. In his original complaint, Mr. Rogers did not specify which defendants were included in each count, instead referring to all defendants collectively as "respondents." (*See* doc. 1-1). But in his amended complaint, Mr. Rogers does name specific defendants in each count. (*See e.g.*, doc. 9 at 5 ¶ 26). This is sufficient for the Defendants to determine the basic allegations against them.

Accordingly, the court **DENIES** the Oneonta Defendants' motion to dismiss Mr. Rogers' claim as a shotgun pleading.

### B. Mr. Rogers' constitutional claims against the Oneonta Defendants

The amended complaint alleges violations of the Fourth, Fifth, Eighth, Tenth, and Fourteenth Amendments. (Doc. 9 at 2–5). Pointing out that Mr. Rogers did not cite to 42 U.S.C. § 1983 in his complaint, the Oneonta Defendants argue that all of Mr. Rogers' constitutional claims must fail because "a plaintiff may not bring claims

directly under the United States Constitution against [a defendant]." (Doc. 11 at 10). While this argument is technically correct, "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

For Counts Two and Six, the Defendants do not provide an alternative ground for dismissal other than that Mr. Rogers cannot directly assert Constitutional claims. The court will not address or advance arguments the Defendants themselves have not made. Accordingly, the court **DENIES** the motion to dismiss Counts Two and Six. In denting the motion to dismiss those counts, the court does not address whether Mr. Rogers has sufficiently stated a claim upon which relief can be granted. The court now turns to the Defendants' argument for dismissal of Counts Four, Five, and Eight.

### i.    Count Four

In Count Four, Mr. Rogers alleges that Officer Suddeth, Sheriff Moon, Mr. Moore, and Skint Knuckle Garage and Towing violated the Fifth Amendment by taking his property without probable cause. (Doc. 9 at 3 ¶¶ 14, 15). The Oneonta Defendants argue that Count Four must be dismissed because the Fifth Amendment's Due Process clause applies only to the federal government. (Doc. 11 at 10).

"The fifth amendment to the United States Constitution restrains the federal government, and the fourteenth amendment, section 1, restrains the states, from depriving any person of life, liberty, or property without due process of law." *Buxton v. City of Plant City, Fla.*, 871 F.2d 1037, 1041 (11th Cir. 1989). Mr. Rogers' complaint does not allege that any of the Oneonta Defendants were federal actors. (*See* doc. 9 at 1 ¶¶ 1–7). In his response to the Oneonta Defendant's motion to dismiss, Mr. Rogers claims that the individual defendants are federal officers because they work for a political subdivision of the State of Alabama, which Mr. Rogers argues is a political subdivision of the United States. (Doc. 15 at 4). This argument is meritless. Because Mr. Rogers' claims against the Oneonta Defendants do not allege the existence of any federal action, his Fifth Amendment claim fails as a matter of law. Accordingly, the court **GRANTS** the Oneonta Defendants' motion to dismiss Count Four against Officer Suddeth **WITH PREJUDICE**.

### ii. Count Five

In Count Five, Mr. Rogers alleges that Officer Suddeth, Sheriff Moon, Mr. Moore and Skint Knuckle Garage and Towing violated the Tenth Amendment by "exerting powers not delegated to the United States by the Constitution or prohibited to it by the states." (Doc. 9 at 4 ¶¶ 16, 17).

The Oneonta Defendants move to dismiss Count Five against Officer Suddeth. (Doc. 11 at 11–14).  They argue that the Tenth Amendment is inapplicable to the facts in Mr. Rogers' case because it acts as a constraint on the federal government's power and does not confer individual constitutional rights.  (*Id*. at 11–12).

The Tenth Amendment "restrains the power of Congress" and "confirms that the power of the Federal Government is subject to limits that may . . . reserve power to the States." *New York v. U.S.*, 505 U.S. 144, 156–57 (1992).  As explained above, Mr. Rogers' complaint does not allege that any of the Oneonta Defendants were federal actors, nor does it attribute any of the alleged violations to the federal government.  Therefore, Count Five suffers the same fatal flaw as does Count Four in that it fails to allege the federal action necessary to state a Tenth Amendment claim.

Accordingly, the court **GRANTS** the Oneonta Defendants' motion to dismiss Count Five against Officer Suddeth **WITH PREJUDICE**.

### iii.    Count Eight

In Count Eight, Mr. Rogers alleges that the City of Oneonta, Officer Suddeth, Sheriff Moon, Mr. Moore, and Skint Knuckle Garage and Towing violated his Eighth Amendment right against excessive bail.  (Doc. 9 at 5 ¶¶ 22, 23).  According to Mr. Rogers, those Defendants required excessive bails and fines in order for Mr.

Rogers to regain custody of his seized property.  (*Id*.).  Mr. Rogers alleges that he is indigent and cannot afford these charges.  (*Id*.).

The Oneonta Defendants move to dismiss Count Eight against the City of Oneonta and Officer Suddeth.  (Doc. 11 at 11–14).  They argue that "the Eighth Amendment prohibits the government from subjecting an *incarcerated* person to the unnecessary and wanton infliction of pain," and that "a plaintiff in an Eighth Amendment excessive force case generally must be a person who has been . . . sentenced to prison."  (*Id*. at 11) (emphasis in original).  Because Mr. Rogers does not allege that he was incarcerated, the Defendants reason that his Eighth Amendment claim must be dismissed.  (*Id*.).

The Defendants misstate Mr. Rogers' claim in Count Eight.  Mr. Rogers does not allege that Officer Suddeth and the City of Oneonta subjected him to cruel and unusual punishment or used excessive force against him.  Instead, he alleges that Officer Suddeth and the City of Oneonta charged him excessive fines to regain custody of his property.  (Doc. 9 at 5 ¶ 22).  The Excessive Fines Clause of the Eighth Amendment "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense."  *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (quotations omitted).  Further, no criminal proceeding is required to invoke the protections of the Excessive Fines Clause, as "[t]he notion of

punishment . . . cuts across the division between the civil and the criminal law." *Austin v. United States*, 509 U.S. 602, 610 (1993) (quotations omitted).

The Oneonta Defendants have not adequately moved to dismiss Count Eight on any other grounds.  Accordingly, the court will not dismiss Count Eight and will not address whether the amended complaint sufficiently alleges facts indicating that the City of Oneonta and Officer Suddeth violated Mr. Rogers' Eighth Amendment right against excessive fines.

Therefore, the court **DENIES** Oneonta Defendants' motion to dismiss Count Eight against the City of Oneonta and Officer Suddeth.

C. Mr. Rogers' state law claims against the Oneonta Defendants

Mr. Rogers asserts state law claims for conversion, fraud, conspiracy, and negligent training against the Oneonta Defendants.  (Doc. 9 at 2–6).  The Oneonta Defendants argue that Mr. Rogers' claims in Counts One, Three, Seven, Ten, Eleven, and Thirteen are barred by Alabama Code § 11-47-190.  (Doc. 11 at 15–19). Additionally, the Oneonta Defendants argue that Mr. Rogers does not plead his fraud claims in Counts Three and Seven with the requisite specificity.  (*Id*. at 19–20). Lastly, the Oneonta Defendants contend that Count Twelve should be dismissed because "no cause of action exists in Alabama against an individual supervisor for the torts of wrongful hiring, training, or supervision."  (*Id*. at 20).

i.    *Mr. Rogers' claims asserting intentional torts*

16

In his amended complaint, Mr. Rogers asserts claims against the Oneonta Defendants for conversion, fraud, and conspiracy.  (Doc. 9 at 2–6 ¶¶ 8, 12, 20, 26, 30, 36).  The Oneonta Defendants argue that Alabama Code § 11-47-190 precludes municipal liability for intentional torts and that, accordingly, Counts One, Three, Seven, Ten, Eleven, and Thirteen should be dismissed.  (Doc. 11 at 14–19).

Section 11-47-190 of the Alabama Code states that Alabama cities and municipalities are not vicariously liable for the torts of their agents unless the agent acted with "neglect, carelessness, or unskillfulness."  Ala. Code § 11-47-190 (1975).  Pursuant to this statute, "a city is liable for negligent acts of its employees within the scope of their employment, but not intentional torts of its employees."  *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 743 (11th Cir. 2010); *see also Ex parte City of Gadsden*, 718 So. 2d 716, 721 (Ala. 1998).  Moreover, a plaintiff may not assert intentional tort claims against city officials in their official capacity, as claims against an official in his or her official capacity are "to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Under Alabama law, conversion, fraud, and conspiracy are each intentional torts.  *Schaeffer v. Poellnitz*, 154 So. 3d 979, 989 (Ala. 2014) ("Conversion is an intentional tort.") (emphasis and quotations omitted); *Aliant Bank, a Div. of USAmeribank v. Four Star Investments, Inc.*, 244 So. 3d 896, 927 (Ala. 2017) ("[F]raud claims [are] among those claims barred by § 11-47-190); *id.*

17

("[C]onspiracy . . . is an intentional tort, and conspiracy claims are barred by § 11-47-190.").  Therefore, § 11-47-190 precludes Mr. Rogers' claims in Counts One, Three, Seven, Ten, Eleven, and Thirteen against the City and against the officials in their official capacities.

Accordingly, the court **GRANTS IN PART** the Defendants' motion to dismiss Counts One, Three, Seven, Ten, Eleven, and Thirteen.   The court **DISMISSES** Count One against the City of Oneonta and against Officer Suddeth in his official capacity, Count Seven against Officer Suddeth in his official capacity, Count Ten against the City of Oneonta and against Officer Suddeth in his official capacity, Count Eleven against Officer Suddeth in his official capacity, and Count Thirteen against the City of Oneonta and against Amanda Stanfield, Officer Suddeth, Chief Clifton, and Mayor Phillips in their official capacities **WITH PREJUDICE**.

The Oneonta Defendants provide no argument as to why the court should dismiss Mr. Rogers' intentional tort claims against them in their individual capacities.  The court will not make arguments to dismiss on the Defendants' behalf. Therefore, the court **DENIES** the Defendant's motion to dismiss Counts One, Three, Seven, Ten, Eleven, and Thirteen against the Oneonta Defendants in their individual capacities.  The court does not address whether Mr. Rogers adequately states a claim against the Defendants in their individual capacities.

### ii.   *Mr. Rogers' fraud claims*

In determining whether Counts Three and Seven are plead with sufficient particularity, this court looks to Federal Rules of Civil Procedure, not Alabama Rules of Civil Procedure. *See generally Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99 (2010). Federal Rule of Civil Procedure 9 requires that a plaintiff allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

In Count Three, Mr. Rogers alleges that Officer Suddeth, Jason Moore, and Skint Knuckle Garage and Towing took his property by impounding his "automobile" after fraudulently misapplying a state statute. (Doc. 9 at 3). According to Mr. Rogers, the state statute applied only to "vehicles." (*Id.*). Mr. Rogers maintains that he was not driving a "vehicle," but that he was driving an "automobile" at the time that he was pulled over by Officer Suddeth. (*Id.*). In Count Seven, Mr. Rogers alleges that Officer Suddeth made fraudulent misrepresentations to the court by stating on a citation that Mr. Rogers "unlawfully operate[d] a motor vehicle or other vehicle" in Oneonta City limits. (*Id.* at 4). Mr. Rogers contends that Officer Suddeth "has no proof" of his statement. (*Id.*).

The court has its doubts about whether a claim alleging "fraudulent misapplication of a law" has ever been acknowledged, much less clearly established, by the Alabama Supreme Court, United States Supreme Court, or Eleventh Circuit. But even if such a claim did exist, Mr. Rogers' allegations are insufficient. The Oneonta Defendants argue that Mr. Rogers fails to identify "what, if any, acts purportedly constitute fraudulent conduct." (Doc. 11 at 19–20). The court agrees. Mr. Rogers does identify the alleged misrepresentation—that he was driving a "vehicle" instead of an "automobile"—and the individual who allegedly made that representation—Officer Suddeth. (Doc. 9 at 3–4). But Mr. Rogers provides no legal basis for his contention that there is a distinction between a "vehicle" and an "automobile." Moreover, Mr. Rogers does not allege that *he* relied on Officer Suddeth's alleged misrepresentation, nor does he state what—if anything—the Defendants gained from the alleged misstatements. Put differently, Mr. Rogers identifies statements that he perceives as untrue, but he fails to demonstrate how those alleged misstatements constitute fraud.

Mr. Rogers fails to plead his fraud claims in Counts Three and Seven with the requisite particularity. Accordingly, the court **DISMISSES** Counts Three and Seven against Officer Suddeth in his individual capacity **WITHOUT PREJUDICE**.

*iii.*   *Mr. Rogers' Negligent Training Claim*

In Count Twelve, Mr. Rogers asserts a failure to train claim against Chief Clifton under a theory of respondeat superior. (Doc. 9 at 6). The Oneonta Defendants move to dismiss Count Twelve, arguing that "no cause of action exists in Alabama against an individual supervisor for the torts of wrongful hiring, training, or supervision." (Doc. 11 at 20). In support of this argument, the Oneonta Defendants cite to several district court cases, including *Ott v. City of Mobile*, 169 F. Supp. 2d 1301 (S.D. Ala. 2001). (*See* doc. 11 at 20–24).

In *Ott*, an off-duty police officer struck an individual in the head and shot another individual, killing him. *Id*. at 1305–06. Those individuals filed suit against the officer, the chief of police, and the City of Mobile. *Id*. at 1306. Among other things, the plaintiffs sought to hold the City liable through Alabama Code § 11-47-190 for its employees' negligence in hiring, training, and supervising the Defendant officer. *Id*. at 1314.

The court dismissed this claim against the City and determined that "no such cause of action exists." *Id*. In so doing, the court looked to Alabama law, which "is clear that the tort of negligent supervision or training requires as an element the existence of a master-servant relationship." *Ott*, 169 F. Supp. 2d at 1315. Further, under Alabama law, "[a] supervisor is not the master of a subordinate, nor is the subordinate the servant of the supervisor . . . the status of 'master' is restricted to one who is actually or essentially the employer of the servant." *Id*. Therefore, no

cause of action for negligent hiring, training, or supervision existed against the City's supervisory employees, and accordingly the plaintiffs could not hold the City liable under § 11-47-190, which "generally allows a plaintiff to sue a municipal defendant for the negligence of its employee." *Id*. at 1314.

Though *Ott* is not a precedential case, the court finds its reasoning persuasive and adopts it here. Mr. Rogers seeks to hold Chief Clifton liable under a theory of respondeat superior for negligently training Oneonta police officers. (Doc. 9 at 6). Like the court in *Ott*, this court is satisfied that, based on a review of Alabama caselaw, no such cause of action exists.

Accordingly, the court **DISMISSES** Count Twelve **WITH PREJUDICE**.

## III.   CONCLUSION

The court **GRANTS** the State of Alabama's motion to dismiss the amended complaint **WITH PREJUDICE**.

The court **GRANTS IN PART** and **DENIES IN PART** the Oneonta Defendants' motion to dismiss the amended complaint. The court **GRANTS** the motion and **DISMISSES** Counts Four and Five against Defendants in their individual and official capacities **WITH PREJUDICE**. The court **GRANTS** the motion and **DISMISSES** Counts One, Three, Seven, Ten, Eleven, and Thirteen against Defendants in their official capacities **WITH PREJUDICE**. The court **GRANTS** the motion and **DISMISSES** Counts Three and Seven against the

22

Defendants in their individual capacities **WITHOUT PREJUDICE**.  The court **GRANTS** the motion and **DISMISSES** Count Twelve against the Defendants in their individual and official capacities **WITH PREJUDICE**.  The court **DENIES** the motion with respect to Counts Two, Six, and Eight.  The court **DENIES** the motion with respect to Counts One, Ten, Eleven, and Thirteen against Defendants in their individual capacities.

      **DONE** and **ORDERED** this April 6, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE